IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **KRISTIN BATTAGLIA**, individually, on behalf of and as next friend of her minor child, **G.M.**, and on behalf of a class of similarly situated persons,<br>279 West High St.<br>East Palestine, OH 44413<br><br>and<br><br>**LAURA ZUCH-BATTAGLIA**, individually, on behalf of and as next friend of her minor child, **S.Z.**, and on behalf of a class of similarly situated persons, and on behalf of her parent, **MARGO ZUCH**, and on behalf of a class of similarly situated persons,<br>279 West High St.<br>East Palestine, OH 44413<br><br>and<br><br>**DAWN BAUGHMAN**, individually and on behalf of a class of similarly situated persons,<br>456 East Martin St.<br>East Palestine, OH 44413<br><br>    Plaintiffs,<br><br>v.<br><br>**NORFOLK SOUTHERN RAILWAY COMPANY**,<br>c/o Corporation Service Company<br>3366 Riverside Dr., Suite 103<br>Upper Arlington, OH 43221<br><br>and<br><br>**NORFOLK SOUTHERN CORPORATION**,<br>650 West Peachtree Street NW<br>Atlanta, GA 30308 | Case No. 4:23-cv-303<br><br>Judge<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY DEMAND ENDORSED HEREON<br><br>Margaret M. Murray (0066633)<br>mmm@murrayandmurray.com<br>Florence A. Murray (0080292)<br>fam@murrayandmurray.com<br>Dennis E. Murray Sr. (0008783)<br>dms@murrayandmurray.com<br>Nolan E. Murray (0097760)<br>nem@murrayandmurray.com<br>Donna Jean A. Evans (0072306)<br>dae@murrayandmurray.com<br>Joseph A. Galea (0089550)<br>jag@murrayandmurray.com<br>MURRAY & MURRAY CO., L.P.A.<br>111 East Shoreline Drive<br>Sandusky, OH 4470<br>Telephone:   (419) 624-3000<br>Facsimile:   (419) 624-0707<br><br>Attorneys for Plaintiffs |

Defendants.

Plaintiffs Kristin Battaglia, G.M., a minor child, Laura Zuch-Battaglia, S.Z., a minor child, Margo Zuch, Dawn Baughman on their own behalf and on behalf of classes of other persons similarly situated, through counsel, file this Class Action Complaint against Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation, and for their Class Action Complaint state as follows:

## PARTIES

1. Plaintiff Kristin Battaglia is an Ohio-domiciled person living at 279 West High St., East Palestine, OH 44413. Her son Plaintiff G.M. lives with her at the East Palestine home. She brings this action on his behalf as his mother and next friend.

2. Plaintiff Laura Zuch-Battaglia is an Ohio-domiciled person living at 279 West High St., East Palestine, OH 44413. Her son S.Z. lives with her at the East Palestine home. She brings this action on his behalf as his mother and next friend.

3. Plaintiff Zuch-Battaglia also brings this action on behalf of her incompetent mother, Margo Zuch who resides at The Christian House, a nursing home located at 82 Garfield Ave., East Palestine, OH 44413. Although Margo Zuch owns the home at 279 West High St., East Palestine, OH 44413, Plaintiff Zuch-Battaglia is an attorney in fact for her mother.

4. Plaintiff Dawn Baughman is an Ohio-domiciled person who owns a home at 456 East Martin St., East Palestine, OH 44413.

5. Defendant Norfolk Southern Railway Company ("Norfolk Southern") is a Virginia corporation with a principal place of business in Atlanta, GA. Norfolk Southern operates a Class I railroad in interstate commerce throughout the eastern half of the continental United States.

6. Defendant Norfolk Southern Corporation ("NS Corp.") is a Virginia corporation with a principal place of business in Atlanta, GA. NS Corp. is the parent company and 100 percent owner of Defendant Norfolk Southern.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) as the parties are completely diverse, this is a class action, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

8. Venue is proper in this Court, under 28 U.S.C. § 1391(b), as the claim for relief arose within this District, namely, in Columbiana County, Ohio.

## FACTUAL BACKGROUND

9. Defendant NS Corp. is a publicly-traded corporation, whose common stock is listed on the New York Stock Exchange. On February 3, 2023, NS Corp.'s stock traded at prices as high as $255 a share, giving NS Corp. an overall market capitalization at the time of $57 billion.

10. NS Corp. is also highly profitable. In its annual report – filed February 3, 2023 – NS Corp. reported net income of $3.27 billion for 2022, with 2022 annual EBITDA of $6.03 billion and free cash flow of $2.274 billion.

11. Much of profit and free cash flow being generated by NS Corp. is being used to fund "the repurchase of up to $10 billion of its common stock beginning April 1, 2022." *Norfolk Southern Announces New $10 Billion Stock Repurchase Program*, Mar. 29, 2022, http://www.nscorp.com/content/nscorp/en/news/norfolk-southern-announces-new--10-billion-stock-repurchase-prog.html (accessed Feb. 14, 2023).

12. NS Corp.'s 2022 annual report states that "At December 31, 2022, we operated approximately 19,100 route miles in 22 states and the District of Columbia. 2022 Annual Report Form 10-K, p. K4. It lists "New York City area to Chicago (via Allentown and Pittsburgh)" as one of its "corridors with heaviest freight volume." *Id.*

13. This Norfolk Southern corridor includes the NS Fort Wayne Line. The NS Fort Wayne Line was constructed from 1851 to 1853 by the Ohio & Pennsylvania Railroad, and was later folded into the famous Pennsylvania Railroad through its Pittsburgh, Fort Wayne, and Chicago Railroad.

14. Through a series of mergers and acquisitions, the Fort Wayne Line came to be owned and operated by Norfolk Southern, as it is today.

15. The Fort Wayne Line passes right through the middle of the Village of East Palestine, an incorporated village and municipal corporation of the State of Ohio situated in Columbiana County.

16. As a result of the facts as alleged above, hazardous cargoes often transit directly through populated areas of East Palestine. Indeed, the Fort Wayne Line roughly parallels the main east-west downtown streets of East Palestine as it enters from the nearby Pennsylvania state line and passes through town to the west, towards Salem and Alliance.

17. NS Corp. freely admits that it transits hazardous materials on Norfolk Southern's rails:

> As a common carrier by rail, we must offer to transport hazardous materials, regardless of risk. Transportation of certain hazardous materials could create catastrophic losses in terms of personal injury and property (including environmental) damage and compromise critical parts of our rail network.

2022 Annual Report 10-K, p. K13.

18. In its 2022 annual report, NS Corp. lists regulations by state and federal governments, including those involving the cleanup of spilled hazardous materials, as a "regulatory risk" which could negatively impact NS Corp.'s business. *Id*. at K12. NS Corp. lists general operational regulation from federal and state transportation regulators as risk factors that could negatively impact its business. Id. at K11-12.

19. NS Corp., in other words, acknowledges that the practices it engaged in as alleged herein could be hazardous to its business, because it very well could be hazardous to humans, as it was and is in this matter.

20. Against this backdrop – and on February 3, 2023, the same day that NS Corp. filed its 2022 annual report – a Norfolk Southern train ("Hazardous Train") consisting of 141 loaded cars, nine cars, and three locomotives was traveling eastbound over Norfolk Southern's Fort Wayne Line.

21. The Hazardous Train was traveling from Madison, IL to Norfolk Southern's Conway Yard in Conway, PA.

22. The Hazardous Train lacked electronically controlled pneumatic brakes. The train instead relied on the traditional air brake system first designed by George Westinghouse in 1868.

23. At 8:55 p.m. Eastern time on February 3, fifty cars from the Hazardous Train derailed just east of the corporate limits of the Village of East Palestine, in close proximity to the Ohio-Pennsylvania border. Upon information and belief, the geographical coordinates of the derailment are 40 degrees 50 minutes 9.6 seconds north latitude, 80 degrees 31 minutes 21.7 seconds west longitude ("Derailment Site").

24. Twenty of the 141 loaded cars on the Hazardous Train were known to be carrying materials classified as hazardous, including butyl acrylate, ethylhexyl acrylate, ethylene glycol monobutyl ether, isobutylene, and benzene residue.

25. Fourteen of these 20 cars were carrying vinyl chloride. Vinyl chloride is a [Group 1 human carcinogen](#) posing elevated risks of tumors.

26. The cause of the derailment was a failed axle and/or wheel bearing on one of the rail cars.

27. By the next day, February 4, 2023, Norfolk Southern crews noticed pollutant spillage into two local waterways—Sulphur Run and Leslie Run. These creeks flow into the Ohio River.

28. More immediately, at about 11:00 p.m. Eastern time on February 3, the local authorities began to recommend evacuation to residents within a one-mile radius of the Derailment Site. Police officers went door to door to notify residents of this evacuation.

29. In the meantime, the derailed rail cars had ignited, burning toxic materials and releasing noxious, hazardous, and toxic fumes and chemicals into the air.

30. On February 5, 2023, Ohio Governor Mike DeWine ordered mandatory evacuation of all persons within a one-mile radius of the Derailment Site, calling it a "matter of life and death."

31. Rail cars continued to burn from February 3 until February 5.

32. However, the cars containing vinyl chloride were still filled with the material.

33. Changing temperatures in the rail cars containing vinyl chloride raised fears that the rail cars would explode. During a February 6 news conference, Gov. DeWine stated:

> The vinyl chloride contents of five rail cars are currently unstable and could potentially explode causing deadly disbursement of shrapnel and toxic fumes.

6

To alleviate the risk of this shrapnel, Norfolk Southern Railway is planning a controlled release of the chemical at 3:30 p.m. The controlled release also has the potential to be deadly if inhaled.

34. At this time, Gov. DeWine, along with Pennsylvania Governor Josh Shapiro, ordered an evacuation area straddling the Ohio-Pennsylvania border, of one mile by two miles.

35. Gov. DeWine's office provided the following Google Earth image ahead of the so-called "controlled release":



According to the Governor's office, individuals remaining in the red area during the release faced "a grave danger of death." Individuals in the yellow area were "at a high risk of severe injury, including skin burns and serious lung damage." *East Palestine Update: Evacuation Area Extended, Controlled Release of Rail Car Contents Planned for 3:30 p.m.*, February 6, 2023, https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/East-Palestine-

7

Update-Evacuation-Area-Extended-Controlled-Release-of-Rail-Car-Contents-Planned-for-3-30-pm-02062023 (accessed February 14, 2023).

36. As it turns out, the "controlled release" process simply involved Norfolk Southern breaching each of five derailed tank cars containing vinyl chloride, and draining the contents into nearby trenches. The material was then ignited, starting a fire meant to burn away the contents of the cars.

37. This process, starting at about 4:30 p.m. Eastern time on February 6, created a huge plume of dark smoke resembling a mushroom cloud, creating apocalyptic images such as this one taken by a local resident:



https://twitter.com/blckndgldfn/status/1623154689280704512?s=20&t=S8w5XgVPtFe4objL1P wYcg, accessed Feb. 14, 2023.

38. The burning released hydrogen chloride and phosgene gas into the surrounding air. Phosgene gas is best known as a chemical weapon utilized in World War I; even low levels of exposure can cause serious pulmonary symptoms and death. Hydrogen chloride is a gas which creates hydrochloric acid upon contact with water. This means that hydrogen chloride can cause

burns when in contact with skin, as well as respiratory and pulmonary symptoms. Hydrogen chloride in the atmosphere also causes acid rain.

39. Hundreds of thousands of pounds of both chemicals were released into the air above East Palestine thanks to Norfolk Southern's "controlled release."

40. In the aftermath of the "controlled release", observers began to question whether the release was necessary. Sil Caggiano, a former fire battalion chief from the Youngstown, Ohio Fire Department with experience in handling hazardous materials told Youngstown's WKBN-TV that "We basically nuked a town with chemicals so we could get a railroad open[,]" suggesting that concern over the volatility of the vinyl chloride in the derailed cars was secondary to the fact that the cars were blocking one of Norfolk Southern's busiest freight corridors.

41. On February 10, 2023, the U.S. EPA informed Norfolk Southern that the EPA had observed and detected "materials released during the incident" in samples from the waterways of Sulphur Run, Leslie Run, Bull Creek, North Fork Little Beaver Creek, Little Beaver Creek, and the Ohio River. It also stated that "Materials related to the incident were observed entering storm drains."

42. As a result of Defendants' actions, the air, water, and soil in and around East Palestine has been contaminated with toxic chemicals, some of which are hazardous to human health at very low concentrations.

43. Mass kills of wild animals and fish have been reported as far as 20 miles away from the Derailment Site.

44. Although mandatory evacuation orders have been lifted and residents have been told that it is safe to return to their homes, Plaintiffs and members of their class believe, with

good reason, that the prospective dangers from the hazardous exposure are being grossly downplayed and that their health has been and is subjected to injurious toxins.

45. As of the filing of this Complaint, none of the named Plaintiffs have returned to their homes in East Palestine.

46. Plaintiffs are faced with the prospect that the real and personal property they own may be damaged beyond their lifetimes and is now worth far less and might be or become unsaleable.

47. Individuals living near East Palestine are at risk of the carcinogens released by Defendants during and after the derailment and the attempts at cleanup.

48. Suspected particulate from the fires have been detected at least as far as Youngstown, Ohio.

49. Both the Ohio and U.S. EPA noted oily spillage from the derailment into the nearby soils.

## CLASS ACTION ALLEGATIONS

50. Plaintiffs repeat and incorporate herein all previously plead allegations.

51. Plaintiffs bring this class action pursuant to Fed.R.Civ.P. 23, on behalf of themselves and all others similarly situated, with the members of the classes being defined as follows:

- Class A: Those residents who live or lived within a two mile radius surrounding the derailment site at the approximate coordinates 40.836, -80.5227 decimal degrees (the "Zone of Danger") on February 3, 2023;

- Class B: Those owners and occupiers of residential or commercial real property in the Village of East Palestine, Ohio and a one hundred mile radius surrounding the derailment site at the approximate coordinates 40.836, -80.5227 decimal degrees (the "Disaster Zone") as of February 3, 2023;

- Class C: Those persons who owned or operated residential gardens, forested land, commercial agricultural property, live crops or livestock within the Disaster Zone as of February 3, 2023.

52. The Defendant, its subsidiaries, its affiliate companies, and its officers are specifically excluded from the Classes.

53. The members of each class are so numerous that joinder would be impracticable. From public records plaintiffs can determine that there are several hundred property owners, and many more residents since a majority of the properties are residential. There are also thousands of individuals impacted by the air borne and water borne spread of the toxic chemicals released by the derailment.

54. The classes are readily identifiable through the records of the Columbiana County Auditor and the Auditors of surrounding counties in Ohio and Pennsylvania and or leases and operating agreements of commercial, residential and agricultural property owners.

55. The claims of Plaintiffs and the members of the classes raise common questions of law and fact that predominate over any questions affecting only individual class members, including:

   a. Whether Defendants operated the train in a manner that was negligent, grossly negligent, reckless and/or with wanton disregard for the safety of the class members and their personal and real property.

   b. Whether Defendants acted in a manner that was negligent, grossly negligent, reckless and/or with wanton disregard for the safety of the class members and their personal and real property in attempting to remedy the February 3, 2023 train derailment.

   c. Whether Plaintiffs and the members of the class they seek to represent have sustained property damages as a direct and proximate cause of Defendants' conduct.

      d. Whether Plaintiffs and the members of the class they seek to represent have sustained physical injuries as a direct and proximate cause of Defendants' conduct.

      e. Whether Plaintiffs and the members of the classes they seek to represent have sustained damages in the form of intentional infliction of emotional distress, stress and lost enjoyment of life as a direct and proximate cause of Defendants' conduct.

56. Defendants' conduct in relation to each of the class members was virtually identical.

57. The claims of the Plaintiffs are typical of the claims of members of each class.

58. The representative parties will fairly and adequately represent the interests of the members of each class.

59. Both Plaintiffs and their counsel meet the adequacy requirement.

60. The Plaintiffs are not antagonistic to the other members of each class and are, in fact, similarly situated with respect to Defendants. The interests of the Plaintiffs in this matter are identical to those of the members of each class.

61. The Plaintiffs' legal counsel has a reputation for competency, experience and skill in handling complex litigation, including class actions. The Plaintiffs' counsel has and will continue to dedicate high levels of skill and dedication to the vigorous prosecution of this class action litigation.

62. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

63. The expense and burden of individual litigation are impediments to individual class members seeking redress for the wrongful conduct alleged.

64. This action is maintainable under Fed.R.Civ.P. 23(b)(3) because questions of law or fact predominate over any question affecting only individual members and that a class action is superior method to other mechanisms available.

65. This action involves almost exclusively identical issues among members of each class.

66. The questions of law and fact arise out of the standard conduct of Defendants.

67. A class action is the superior method to the alternatives such as: joinder; a test case; and individual actions. The number of class members makes joinder impracticable. Litigation is too costly for individuals to each bring an individual claim due to the relatively small claim per member of the class and expense of litigating against a defendant with virtually limitless litigation resources. The test case is not a superior method because Defendant would likely settle individual claims to prevent adjudication of liability and a test case scenario would likely require follow-up litigation, which could be avoided by a class action.

68. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude the maintenance of a class action. Furthermore, by way of class action, the Court can determine the rights of all members of the class with judicial economy.

### COUNT 1
### NEGLIGENCE
### (All Plaintiffs against all Defendants)

70. Plaintiffs reallege all previously plead allegations as though fully restated herein.

71. Defendants Norfolk Southern and NS Corp. owe Plaintiffs and their Class the common law duty of due care.

72. Defendants Norfolk Southern and NS Corp. breached that duty by permitting the release of toxic and hazardous substances into the air, water, and soil in and around East Palestine and in proximity to the Plaintiffs.

73. Defendants breached their duty to Plaintiffs by:

   a. Failing to adequately train and supervise its employees on the safe loading and operation of trains carrying hazardous materials;

   b. Failing to use adequate measures to safely transport hazardous and toxic materials;

   c. Failing to adequately inspect and maintain track, rails, ties, ballast, rolling stock, and locomotives involved in the transport of hazardous and toxic materials;

   d. Failing to adequately contain spilled contents of train cars carrying hazardous and toxic materials;

   e. Failing to adequately warn of the effects of the spills and releases caused by the February 3, 2023 derailment;

   f. Failing to cause a timely and sufficiently broad evacuation of individuals from the zone of danger created by the derailment;

   g. Failing to adequately and safely remove and dispose of the hazardous and toxic contents of derailed train cars; and,

   h. Other acts and omissions which breached the duty of care owed to Plaintiffs and which will be determined through discovery.

74. Defendants' breach of the duty of due care proximately caused injury to the Plaintiffs in the form of economic and noneconomic damages.

75. Defendants' actions were also reckless and conducted with a conscious disregard for the rights and safety of the Plaintiffs and other members of the public.

76. Defendants are therefore liable to Plaintiffs for punitive and exemplary damages.

## COUNT 2
## STRICT LIABILITY
### (All Plaintiffs against all Defendants)

77. Plaintiffs reallege all previously pled allegations as though fully restated herein.

78. Defendants engaged in an ultra-hazardous and abnormally dangerous activity by transporting hazardous, volatile, and toxic substances through populated areas such as the Village of East Palestine, Ohio and in close proximity to occupied homes.

79. Defendants are strictly liable for all harms and losses caused by their ultra-hazardous and dangerous activities.

80. Defendants' ultra-hazardous and abnormally dangerous activities caused harms and losses to Plaintiffs. Defendants are liable to Plaintiffs for all harms and losses caused by their ultra-hazardous and abnormally dangerous activities.

## COUNT 3
## NUISANCE
### (All Plaintiffs against all Defendants)

81. Plaintiffs reallege all previously pled allegations as though fully restated herein.

82. Defendants, by engaging in the activities alleged in this Complaint, have invaded the Plaintiffs' real properties and their interests thereof.

83. Defendants have intentionally and unreasonably intruded on Plaintiffs' properties

84. Defendants have negligently, recklessly, and/or by engaging in abnormally dangerous conduct intruded on Plaintiffs' property interests.

85. Defendants have created a private nuisance regarding the Plaintiffs.

86. Defendants' nuisance is permanent in nature.

87. Defendants are liable to the Plaintiffs for all harms and losses caused by the private nuisance.

## COUNT 4
## DAMAGE TO TREES AND CROPS
### (Plaintiff Dawn Baughman against all Defendants)

88. Plaintiffs reallege all previously pleaded averments as though fully restated herein.

89. Plaintiff Dawn Baughman raises crops at her home to grow produce to feed herself and her family.

90. Under Ohio Revised Code § 901.51, no person shall recklessly injure or destroy a vine, bush, shrub, sapling, tree or crop standing or growing on the land of another or upon public land.

91. Defendants' reckless conduct, as described in this Complaint, has injured or destroyed or is injuring or destroying vines, bushes, shrubs, saplings, trees, and/or crops found on the land of Plaintiff Dawn Baughman.

92. Pursuant to Ohio Revised Code § 901.51, Defendants are liable for the damaged and destroyed vines, bushes, shrubs, saplings, trees or crops' value, as well as treble damages.

## COUNT 5
## TRESPASS
### (All Plaintiffs against all Defendants)

93. Plaintiffs reallege all previously pled allegations as though fully restated herein.

94. Defendants intentionally and unlawfully entered onto the lands of another, the Plaintiffs, by their "controlled release" of vinyl chloride which released byproducts such as phosgene and hydrogen chloride onto the real properties owned or occupied by Plaintiffs.

17

95. Defendants' intentional and unlawful entry is a trespass.

96. Defendants are liable to Plaintiffs for all harms and losses caused by their trespass onto Plaintiffs' lands.

WHEREFORE Plaintiffs pray for judgment in their favor and in favor of the proposed class members, against Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation, for monetary damages in an amount exceeding Seventy-Five Thousand Dollars ($75,000), for economic and non-economic damages, punitive and exemplary damages, attorneys fees, interest, and costs, treble damages for violations of Ohio Revised Code Sec. 901.51, and the following relief:

 a. An order certifying this action as a class action under Fed.R.Civ.P. 23, and certifying all classes;

 b. An order appointing named Plaintiffs as representatives of the certified classes;

 c. An order appointing Plaintiffs' counsel as class counsel;

 d. All other relief as may be just or appropriate under the circumstances, including but not limited to any available equitable relief.

*/s/ Margaret M. Murray*
Margaret M. Murray (0066633)
mmm@murrayandmurray.com
Florence A. Murray (0080292)
fam@murrayandmurray.com
Dennis E. Murray Sr. (0008783)
dms@murrayandmurray.com
Nolan E. Murray (0097760)
nem@murrayandmurray.com
Donna Jean A. Evans (0072306)
dae@murrayandmurray.com
Joseph A. Galea (0089550)
jag@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.

111 East Shoreline Drive
Sandusky, OH 4470
Telephone:     (419) 624-3000
Facsimile:     (419) 624-0707

Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all causes of action and issues so triable.

                                                   */s/ Margaret M. Murray*
                                                   Margaret M. Murray (0066633)
                                                   MURRAY & MURRAY CO., L.P.A.

                                                   Attorney for Plaintiffs